**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| KHELBY CALMESE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 2:25-CV-00049 HEA |
| | ) | |
| MISSOURI DEPT. OF CORR., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Self-represented plaintiff Khelby Calmese, an inmate at Eastern Reception and Diagnostic Center (ERDCC) brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his civil rights. Plaintiff filed his Amended Complaint on July 30, 2025, pursuant to this Court's July 17, 2025 Opinion, Memorandum and Order. *See* ECF No. 8. After reviewing the Amended complaint for frivolousness, maliciousness and failure to state a claim, the Court will issue process on Plaintiff's retaliatory discipline claim against Defendants Larry Allen and Clay Stanton in their individual capacities. All other claims and Defendants are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. When reviewing a complaint filed by a self-represented person under 28 U.S.C. § 1915, the Court accepts the well-pleaded facts as true, *White v. Clark*, 750 F.2d 721, 722 (8th Cir. 1984), and it liberally construes the complaint. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district

court should construe the plaintiff's complaint in a way that permits the claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even self-represented plaintiffs are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980); *see also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (refusing to supply additional facts or to construct a legal theory for the self-represented plaintiff).

To state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. *Id.* at 679.

An action is frivolous if it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). While federal courts should not dismiss an action commenced *in forma pauperis* if the facts alleged are merely unlikely, the court can properly dismiss such an action as factually frivolous if the facts alleged are found to be "clearly baseless." *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (quoting *Neitzke,* 490 U.S. at 327). Allegations are "clearly baseless" if they are "fanciful," "fantastic," or "delusional." *Id.* (quoting *Neitzke*, 490 U.S. at 325, 327, 328). "As those words suggest, a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* at 33.

**Plaintiff's Amended Complaint**

Plaintiff initiated this action by filing a Prisoner Civil Rights Complaint Form on July 3, 2025. [ECF No. 1]. In his initial Complaint, Plaintiff sued 12 Defendants associated with Northeast Correctional Center (NECC) and alleged several separate claims for relief. Because Plaintiff asserted multiple claims against multiple Defendants in violation of Federal Civil Procedure Rules 18 and 20, the Court ordered Plaintiff to file an Amended Complaint on a Court-provided form. [ECF No. 8]. Plaintiff was required to pursue claims in his Amended Complaint that were related to only one transaction or occurrence or alternatively, claims involving the same Defendant. *See id*.

On July 30, 2025, Plaintiff filed his Amended Complaint against 11 Defendants: (1) the Missouri Department of Corrections (MDOC); (2) Warden of NECC, Clay Stanton; (3) Deputy Warden of NECC, Larry Allen; (4) Sergeant Unknown Lindsay; (5) Case Manager D. Winchell; (6) Functional Unit Manager Chad Ream; (7) Lieutenant Unknown Cassidy; (8) Deputy Director of the MDOC, Jason Lewis (9) Deputy Warden of NECC, Ashly Brooks; (10) Corrections Officer Olugbeng Oyesoko; and (11) Case Manager Heather Cartwright. Plaintiff sues Defendants in their individual and official capacities.

Plaintiff alleges that in June of 2024, he was accused of having a piece of paper with K2 (synthetic marijuana) in one of his folders being kept in the property room at NECC. According to Plaintiff, on June 11, 2024, Warden Clay Stanton, Deputy Warden Larry Allen, Deputy Warden Ashly Brooks and several other Correctional Officers came to the Dynamo House Community Program[1] at NECC and called everyone out of their cells to discuss an issue. [ECF No. 9 at 7]. Defendants believed someone in the Dynamo Program was selling drugs. *Id*. Plaintiff does not

[1] According to Plaintiff, the Dynamo House Community Program allows inmates who have been on good behavior to live in a community setting during their incarceration at NECC. They are provided extended privileges.

indicate what led officials to believe inmates were selling drugs in the Dynamo Program. However, a search utilizing a "narcotics detention dog" was conducted at the NECC property room and the K-9 alerted on a yellow folder belonging to Plaintiff. *Id*. Each piece of paper in the folder was tested and one piece of paper in the folder tested positive for K2. *Id.*

After the meeting in Dynamo House on June 11, 2024, Defendant Stanton had Plaintiff moved to Administrative Segregation pending an investigation.[2] *Id*. On June 13, 2024, Defendant Lindsay and Defendant Cartwright visited Plaintiff in Administrative Segregation to issue Plaintiff a conduct violation. While issuing Plaintiff the violation, Defendants also read Plaintiff his *Miranda* rights. *Id.* Plaintiff was charged with possession of a controlled and/or intoxicating substance. *Id*. Plaintiff requested an attorney and a polygraph test to "prove [his] innocent [sic]."

Plaintiff claims that pursuant to Missouri Department of Corrections (MDOC) Policy D5-7.1, he requested that a second test be done on the property found with the alleged K2. However, he was told by Defendant Stanton that the property had been disposed of "per policy." *Id*. Plaintiff also states that he requested a "Truth Verification Examination" per the MDOC Policy D1-8.3, which also allegedly allows for polygraph examinations.[3] *Id*. However, he claims that was denied the right to a polygraph examination and an attorney at the disciplinary hearing by Defendants Winchell, Ream, Lindsay and Cassidy. *Id.* at 8-10. Plaintiff additionally asserts in a conclusory manner that Defendants Winchell, Ream and Lewis failed to properly investigate his claims that

---

[2] It is unclear from Plaintiff's Amended Complaint how long he stayed in Administrative Segregation. On page 9 of his Amended Complaint he states, "I stay 2 ½ in segregation which violate my rights to due process." [ECF No. 9 at 9]. The Court is unable to ascertain if Plaintiff is referring to weeks or months.

[3] As noted in the Opinion, Memorandum and Order issued on July 17, 2025, it is well established that an internal jail policy or procedure does not create a constitutional right, nor does a jail official's failure to follow such a policy or procedure rise to the level of a § 1983 claim. *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship,* 100 F.3d 640, 643 (8th Cir. 1996)); *see also Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997) (failure to follow prison policy is not basis for § 1983 liability).

he did not bring drugs into the Dynamo Community. *Id*. at 8-10. Plaintiff fails to indicate what he asked for as far as an investigation.

Plaintiff believes that he was unlawfully written up for the conduct violation in retaliation for having filed a grievance against two individuals at NECC, Pascha Allen and Kali Smith. Plaintiff claims that Pascha Allen is the wife of Deputy Warden Larry Allen, and Kali Smith is the significant other to Warden Clay Stanton. *Id.* at 8-9. Plaintiff believes Deputy Warden Larry Allen and Warden Clay Stanton set him up to put "him out" of the Dynamo Community Program after filing the grievance against their significant others. *Id*. at 9.

Although this claim appears unrelated to Plaintiff's claim regarding his possession of a controlled and/or intoxicating substance charge, Plaintiff alleges that he was found with an excess of stamps after his possessions were searched when he was moved from the Dynamo House Community Program to the Administrative Segregation Unit on June 11, 2024. *Id.* at 11. The search appears to have been done by Defendants Oyesoko and Cartwright. Defendants purportedly found a piece of paper in Plaintiff's cell that contained 100 stamps, which is more than Plaintiff was allowed to have. *Id.* Plaintiff was given a conduct violation for possessing contraband or having excess stamps. *Id*. And he blames Defendants Oyesoko and Cartwright for failing to "properly investigate" how he legally obtained that many stamps. Plaintiff also blames Defendants for failing to give the stamps, which he says he obtained in a legal manner, to his family. *Id*. It appears that Defendants got rid of the excess stamps.

For relief in this action, Plaintiff seeks monetary damages and removal of the conduct violations. Plaintiff also seeks release from incarceration.[4]

[4] To the extent Plaintiff brings this action seeking immediate release from confinement, such relief is not available under § 1983. "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus." *Preiser v. Rodriguez,* 411 U.S. 475, 500 (1973); *see also Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005) (explaining that Supreme Court "has held that a prisoner in state custody cannot use a [42 U.S.C.] § 1983 action to

## Discussion

After careful review and liberal construction of the pleadings, the Court will issue process on Plaintiff's retaliatory discipline claim against Defendants Larry Allen and Clay Stanton in their individual capacities. All other claims and Defendants are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

### I. Official Capacity Claims for Money Damages

To the extent Plaintiff brings § 1983 claims seeking money damages, all of Plaintiff's Amended Complaint claims are brought against Defendants in their official capacities only. Naming a government official in his or her official capacity is the equivalent of naming the government entity that employs the official. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). In an official capacity claim against an individual, the claim is actually "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, a "suit against a public employee in his or her official capacity is merely a suit against the public employer." *Johnson v. Outboard Marine Corp.*, 172 F.3d 531, 535 (8th Cir. 1999). As such, Plaintiff's official capacity claims against the NECCC Defendants are actually claims against their employer, the MDOC – an agency of the State of Missouri.

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will*, 491 U.S. at 71; *see also Calzone v. Hawley*, 866 F.3d 866, 872 (8th Cir. 2017)

---

challenge the fact or duration of his confinement"); *Adams v. Agniel*, 405 F.3d 643, 644-45 (8th Cir. 2005) (explaining that a habeas action is the proper vehicle for a prisoner to challenge the legality of his sentence or seek immediate or speedier release); *Otey v. Hopkins*, 5 F.3d 1125, 1130 (8th Cir. 1993) (stating that when "a prisoner directly attacks the validity of his sentence, the proper vehicle is a habeas corpus action"). However, Plaintiff is warned that a federal court does not have jurisdiction to issue a writ of habeas corpus to a person in state custody unless the inmate "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Before filing another action on this claim, Plaintiff must consider which court—state or federal—is the correct venue for his claim. *See Travis v. Lockhart*, 925 F.2d 1095, 1097 (8th Cir. 1991) (finding petitioner's claim for jail time credit under a state statute was "a matter of state concern and not a proper function of a federal court under its habeas corpus jurisdiction").

(stating that a "suit for damages against a state official in his official capacity is a suit against the State, and the State is not a person under § 1983"). In the absence of a waiver, the Eleventh Amendment[5] bars a § 1983 suit against a state official acting in his or her official capacity. *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741, 744 (8th Cir. 1998). Accordingly, Plaintiff's claims for money damages, brought against Defendants in their official capacity, are barred by the Eleventh Amendment and must be dismissed. *Andrus ex rel. Andrus v. Ark.*, 197 F.3d 953, 955 (8th Cir. 1999) ("A claim for damages against a state employee in his official capacity is barred under the Eleventh Amendment."); *Arizonans for Official English v. Ariz.*, 520 U.S. 43, 69 n.24 (1997) ("State officers in their official capacities, like States themselves, are not amenable to suit for damages under § 1983.").

To the extent Plaintiff seeks prospective injunctive relief in the form of expungement of his conduct violations, he has not plausibly alleged an ongoing constitutional violation attributable to any state official. Accordingly, the exception recognized in *Ex parte Young*, 209 U.S. 123 (1908), does not apply.

## II. Individual Capacity Claims

### A. Due Process Claims Relating to Plaintiff's Conduct Violations on June 11, 2024

The United States Supreme Court has determined that prisoners have a protected liberty interest in avoiding conditions of confinement that impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To establish a conditions of confinement claim under the Eighth Amendment, a prisoner must demonstrate (1) that the alleged deprivation was "objectively, sufficiently serious" to result in the "denial of the minimal civilized measure of life's necessities," and (2) that the

[5] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

defendant whose act or omission caused the alleged constitutional deprivation behaved with "deliberate indifference to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations and citations omitted); *Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004).

Although Plaintiff complains about the loss of his privileges in the Dynamo Community Program when he was given the conduct violation for possession of a controlled and/or intoxicating substance, he fails to allege that he lost a protected liberty interest when he was moved from the Dynamo Community Program to Administrative Segregation. And the Due Process Clause requires procedural protections only when a prison disciplinary action results in the loss of a protected liberty interest. *See Sandin*, 515 U.S. at 483–84. A prisoner has a liberty interest only if the disciplinary sanction imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," or inevitably affects the duration of his sentence. *Id.* at 484, 487. To survive screening, the Plaintiff must allege facts showing such a hardship. *Portley-El v. Brill,* 288 F.3d 1063, 1065–66 (8th Cir. 2002) (affirming dismissal under § 1915A where the plaintiff "did not allege a liberty interest" and failed to allege that his disciplinary conditions amounted to atypical and significant hardships).

Plaintiff alleges that with the special privileges he was afforded in the Dynamo Program, he would have been able to apply for clemency at some point in the future. But he is currently serving a life sentence in the Missouri Department of Corrections. *See State v. Calmese*, No. 22941-00578-01 (22nd Jud. Cir., St. Louis City). Thus, any ability to seek clemency is merely speculative and cannot form the basis for a liberty interest.

Moreover, Plaintiff fails to articulate how long he was kept in Administrative/Disciplinary Segregation after he was found guilty of the conduct violations on June 11, 2024. He stated, "I stay 2 ½ in segregation which violate my rights to due process." [ECF No. 9 at 9]. The Court is unable to ascertain if Plaintiff is referring to weeks or months. The Eighth Circuit has stated that

an assignment to Disciplinary or Administrative Segregation is not, in and of itself, an atypical and significant hardship. *See Portley-El*, 288 F.3d at 1065 (stating that Eighth Circuit has "consistently held that administrative and disciplinary segregation are not atypical and significant hardships under *Sandin*").

Plaintiff does not allege any consequences that distinguish his confinement from the ordinary incidents of prison life or that inevitably affect the duration of his sentence. The Eighth Circuit has held that even a demotion to segregation does not, without more, impose an atypical and significant hardship, and that a court determining whether a liberty interest exists does not consider the procedures the prison employed. *Phillips,* 320 F.3d at 847–48. Plaintiff therefore fails to plead a protected liberty interest, and the Court need not decide whether his conduct hearing complied with procedural due process requirements.

Plaintiff also argues that he had a right to legal counsel at his conduct hearing because he faced potential criminal prosecution. Inmates have no right to retained or appointed counsel in prison disciplinary hearings. *Wolff v. McDonnell*, 418 U.S. 539, 570 (1974). The protections of *Miranda v. Arizona*, 384 U.S. 436 (1966), likewise do not extend to such hearings, which "are not part of a criminal prosecution." *Baxter v. Palmigiano*, 425 U.S. 308, 315 (1976) (quoting *Wolff*, 418 U.S. at 556). Furthermore, at various points Plaintiff asserts that he should have been able to arrange a polygraph examination. To the extent that Plaintiff is asserting that his inability to take a polygraph examination violates his Due Process rights, such a claim must fail. Plaintiff does not have a constitutional right to a polygraph examination as part of the prison disciplinary proceedings against him. *See Freitas v. Auger*, 837 F.2d 806, 812 n.13 (8th Cir. 1988) (stating that an inmate charged with a major conduct violation was not entitled to a polygraph examination as to whether he participated in planning or furthering an escape).

Finally, to the extent Plaintiff alleges that Defendants (especially Defendants Oyesoko and Cartwright) conducted an illegal search of his cell, the claim fails because the Fourth Amendment's prohibition against unreasonable searches does not apply to prison cells. *Hudson v. Palmer*, 468 U.S. 517, 525–26 (1984).[6]

**B. Retaliatory Discipline Claim**

"An inmate has a viable § 1983 claim where a prison official files a disciplinary charge in retaliation for the inmate's exercise of his constitutional rights." *Sanders v. Hobbs*, 773 F.3d 186, 190 (8th Cir. 2014). To establish a First Amendment retaliation claim, a plaintiff must show three things: first, that he engaged in a protected activity; second, that a government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity; and finally, that the adverse action was at least partly motivated by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004). While the filing of a false disciplinary charge itself is not actionable under § 1983, such a filing becomes actionable if it is done in retaliation for the inmate's filing of a grievance. *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994).

In this case, Plaintiff alleges that he filed a grievance against two individuals at NECC, Pascha Allen and Kali Smith. Plaintiff claims that Pascha Allen is the wife of Deputy Warden

[6] To the extent Plaintiff is bringing an unconstitutional taking claim relating to his personal property against Defendants Oyesoko and Cartwright, this claim also fails. There is no cause of action under 42 U.S.C. § 1983 for unconstitutional taking of personal property where the state provides an adequate post-deprivation remedy. *See Clark v. Kansas City Missouri Sch. Dist.,* 375 F.3d 698, 702 (8th Cir. 2004) ("When a state employee's unauthorized, random acts deprive a person of property, the state employee's acts do not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available"). Missouri provides an adequate post-deprivation remedy. *See Orebaugh v. Caspari*, 910 F.2d 526, 527 (8th Cir. 1990). Specifically, an individual claiming the right to possession of personal property may bring an action in replevin in Missouri state court. Mo. R. Civ. P. 99.01; *see also Allen v. City of Kinloch*, 763 F.2d 335, 337 (8th Cir. 1985) (stating that plaintiff seeking return of personal property under 42 U.S.C. § 1983 failed to establish any violation of his constitutional rights because he could obtain adequate relief by filing a replevin action under Missouri law). As such, Plaintiff cannot make a constitutional claim for loss of property in this Court, and his claim under § 1983 is subject to dismissal.

Larry Allen, and Kali Smith is the significant other to Warden Clay Stanton. [ECF No. 8 at 8-9]. Plaintiff believes Deputy Warden Larry Allen and Warden Clay Stanton set him by filing conduct violations against him to kick him out of the Dynamo Community Program after he filed a grievance against their significant others. *Id.* at 9. Given Plaintiff's allegations, the Court will issue process on Plaintiff's retaliatory discipline claim with respect to Defendants Allen and Stanton.

**Conclusion**

After careful review and liberal construction of the pleadings, the Court will issue process on Plaintiff's retaliatory discipline claim against Defendants Larry Allen and Clay Stanton in their individual capacities. All other claims and Defendants are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

Accordingly,

**IT IS HEREBY ORDERED** that the official capacity claims against all Defendants, including the Missouri Department of Corrections, are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the individual capacity claims against Defendants Unknown Lindsay, D. Winchell, Chad Ream, Unknown Cassidy, Jason Lewis, Ashly Brooks, Olugbeng Oyesoko and Heather Cartwright are **DISMISSED** without prejudice. *See* 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that the Clerk shall issue process in accordance with the Memorandum of Understanding that this Court maintains with the Missouri Attorney General's Office as to Missouri Department of Corrections' employees Clay Stanton and Larry Allen in their individual capacities on Plaintiff's claim for retaliatory discipline.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Access to Courts [ECF No. 14] is **DENIED** without prejudice as Defendants have not been served and discovery has not yet commenced in this action.

**IT IS HEREBY CERTIFIED** that an appeal of this Order of Partial Dismissal would not be taken in good faith.

An Order of Partial Dismissal will accompany this Opinion, Memorandum and Order.

Dated this 2nd day of October, 2026.

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE